IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ZACHARY ROBERT BABCOCK,<br><br>     Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>     Respondent. | MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY<br><br>Civil Case No. 2:18-CV-819 TS<br>Criminal Case No. 2:17-CR-124 TS<br><br>District Judge Ted Stewart |

   This matter is before the Court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. For the reasons discussed below, the Court will deny the Motion and dismiss this case.

## I.  BACKGROUND

   On February 27, 2017, Petitioner was charged in a Felony Information with possession of methamphetamine with intent to distribute and felon in possession of firearm and ammunition. On May 25, 2017, the prosecutor sent Petitioner's trial counsel an email explaining that he believed Petitioner's prior convictions made him a career offender under the United States Sentencing Guidelines ("USSG"), which would have resulted in a guideline range of 151 to 188 months if Petitioner pleaded guilty to the drug charge. However, the prosecutor acknowledged that Petitioner's previous convictions may not be counted as separate offenses under the Guidelines. If Petitioner were to plead to the firearm charge, the prosecutor believed the guideline range would be 110 to 137 months. The prosecutor went on to state that if the parties

were unable to reach an agreement, he might be required to file an Information under 21 U.S.C. § 851, which would have required a minimum mandatory sentence.

In response to this email, Plaintiff's trial counsel conducted his own research and looked in particular at whether Petitioner would qualify as a career offender. To do so, counsel obtained the dockets from the state court convictions. He also met with a supervisory United States Probation officer to confirm his analysis. Based upon that research, trial counsel believed that Petitioner would not qualify as a career offender because his prior convictions would not be counted separately.

Trial counsel ultimately advised Petitioner that it was in his best interest to plead to the firearm charge. Doing so avoided the potential application of a § 851 enhancement. Petitioner followed his counsel's advice and pleaded guilty to being a felon in possession of firearm and ammunition on July 5, 2017.

After his change of plea, a Presentence Report was prepared. The Presentence Report placed Petitioner's base offense level at a 20 pursuant to USSG § 2K2.1(a)(4)(A). Relevant here, this provision calls for a base offense level of 20 if the defendant committed the instant offense subsequent to sustaining one felony conviction of a controlled substance offense. The Presentence Report also contained a four level enhancement under USSG § 2K2.1(b)(6)(B) because Petitioner possessed the firearm in connection with another felony offense.

At sentencing, counsel objected to the four-level "in connection with" enhancement. However, counsel did not object to the base offense level. Counsel testified that he did not object to the base offense level because he believed Petitioner's prior convictions qualified as controlled substance offenses under the Guidelines.

Petitioner was ultimately sentenced to 70 months in the custody of the Bureau of Prisons, a sentence at the low-end of the Guideline range. Judgment was entered on October 5, 2017.

Counsel testified that, after sentencing, Petitioner expressed interest in filing an appeal. In response, counsel informed Petitioner that he had waived his right to appeal based upon the appeal waiver contained in his plea agreement. Despite this, counsel sought and received an extension of time to file an appeal so that he could determine whether there was anything Petitioner could appeal. Specifically, counsel looked to see whether there was a problem at the change of plea hearing. Counsel also looked at whether the prosecutor had somehow violated the plea agreement at sentencing. After doing this additional analysis, counsel once again advised Petitioner not to file an appeal. Petitioner accepted this advice and no appeal was filed.

Petitioner, through counsel, timely filed the instant Motion on October 19, 2018. Petitioner raises two claims of ineffective assistance. First, Petitioner argues that his counsel was ineffective in failing to object to the base offense level contained in the Presentence Report. Second, Petitioner argues that counsel was ineffective for failing to file an appeal.

The Court conducted an evidentiary hearing on the Motion on November 21, 2019. Thereafter, the Court received supplemental briefs from the parties.

## II. STANDARD OF REVIEW

28 U.S.C. § 2255(a) provides,

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Petitioner's claims are based on alleged ineffective assistance of counsel. The Supreme Court has set forth a two-pronged test to guide the Court in making a determination of ineffective assistance of counsel. "To demonstrate ineffectiveness of counsel, the defendant must generally show that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance was prejudicial."[1] To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[2]

A court is to review Petitioner's ineffective-assistance-of-counsel claim from the perspective of his counsel at the time he or she rendered the legal services, not in hindsight.[3] In addition, in evaluating counsel's performance, the focus is not on what is prudent or appropriate, but only what is constitutionally compelled.[4] Finally, "[t]here is a strong presumption that counsel provided effective assistance, and a section 2255 defendant has the burden of proof to overcome that presumption."[5]

## III. DISCUSSION

Petitioner raises two claims of ineffective assistance, one dealing with sentencing and the other with failing to file an appeal. Each will be discussed in turn.

---

[1] *United States v. Lopez*, 100 F.3d 113, 117 (10th Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 690 (1984)).

[2] *Strickland*, 466 U.S. at 694.

[3] *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998).

[4] *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984).

[5] *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000) (quoting *United States v. Williams*, 948 F. Supp. 956, 960 (D. Kan. 1996)).

A.    PROCEDURAL BAR

Before reaching the merits of Petitioner's claims, the Court must address the government's argument that Petitioner's claims are procedurally barred.  Under § 2255, Petitioner may not raise issues that could have been raised on direct appeal.[6]  However, ineffective assistance of counsel claims may be raised for the first time in a collateral proceeding.[7]  Indeed, "it is well established that ineffective assistance of counsel claims should generally be brought in collateral proceedings, not on direct criminal appeal."[8]  Therefore, Petitioner's ineffective assistance claims are not procedurally barred and can be reviewed on the merits.[9]

Further, even if these claims were procedurally barred, Petitioner could overcome this procedural bar by demonstrating cause and prejudice.  "A defendant may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment."[10]  The cause and prejudice analysis essentially collapses with Petitioner's ineffective assistance claims, which are addressed below.

B.    FAILURE TO OBJECT TO BASE OFFENSE LEVEL

Petitioner first challenges counsel's failure to object to his base offense level.  The Tenth Circuit has stated that "the failure to object to the legally erroneous imposition of an

---

[6] *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994).

[7] *Massaro v. United States*, 538 U.S. 500, 504 (2003).

[8] *United States v. Trestyn*, 646 F.3d 732, 740 (10th Cir. 2011).

[9] *United States v. Galloway*, 56 F.3d 1239, 1240–43 (10th Cir. 1995) (en banc).

[10] *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995).

enhancement under the Sentencing Guidelines constitutes ineffective assistance."[11]   Therefore, to establish that his counsel was deficient, Petitioner must show that his base offense level was incorrectly calculated.  To do so, he must establish that his prior convictions were "facially insufficient" to satisfy the definition of a controlled substance offense under the Sentencing Guidelines.[12]

1.      *Offers to Sell*

Petitioner's base offense level was calculated to be a 20 pursuant to USSG § 2K2.1(a)(4)(A).  Under this provision, a base offense level of 20 applies if the defendant committed the instant offense subsequent to sustaining one felony conviction of a controlled substance offense.  A controlled substance offense has the same meaning as that term has in USSG § 4B1.2.  Section 4B1.2(b) defines controlled substance offense as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.[13]

---

[11] *United States v. Sims*, 218 F. App'x 751, 753 (10th Cir. 2007) (citing *Jansen v. United States*, 369 F.3d 237, 244 (3d Cir. 2004)).

[12] *See United States v. Kissick*, 69 F.3d 1048, 1056 (10th Cir. 1995), *abrogated on other grounds by United States v. Horey*, 333 F.3d 1185, 1187–88 (10th Cir. 2003)  ("An attorney's failure to challenge the use of a prior conviction to classify the defendant as a career offender when that prior conviction is facially insufficient to satisfy the definition of a 'controlled substance offense' under USSG § 4B1.2 therefore constitutes deficient performance under *Strickland*.").

[13] USSG § 4B1.2(b) (2016).

Application Note 1 provides that a controlled substance offense includes the offense of aiding and abetting, conspiring, and attempting to commit such an offense.[14]  Use of the term "'includes' is not exhaustive."[15]

Petitioner has two 2005 convictions for distribution of a controlled substance in violation of Utah Code Ann. § 58-37-8(1)(a)(ii).  Petitioner argues that this statute is not categorically a controlled substance offense, as defined by the Guidelines, and his base offense level should not have been enhanced based upon these convictions.

Section 58-37-8(1)(a)(ii) makes it unlawful to knowingly and intentionally "distribute a controlled or counterfeit substance, or to agree, consent, offer, or arrange to distribute a controlled or counterfeit substance."  Because this statute includes an offer to distribute, Petitioner initially argued that it is broader than the definition contained in USSG § 4B1.2.  In his Supplemental Memorandum, Petitioner now argues that the statute is overly broad in other ways.  As will be discussed, Petitioner's new argument does not alter the Court's analysis.

In two recent cases, the Tenth Circuit has examined statutes that included offers for sale and concluded that such statutes were broader than the definition of controlled substance offense contained in the Sentencing Guidelines.  In *United States v. Madkins*,[16] the Tenth Circuit considered the Kansas Uniform Controlled Substance Act which prohibited, among other things, offers to sell.[17]  The court held that "since an offer to sell is broader than distribution as defined in the Guidelines, [the defendant's] prior offenses are not controlled substance offenses for

_____

[14] *Id.* App. Note 1.

[15] USSG § 1B1.1 App. Note 2.

[16] 866 F.3d 1136 (10th Cir. 2017).

[17] *Id.* at 1145.

purposes of the [Guidelines]."[18]  To support this conclusion, the court examined cases from the

Fifth and Second Circuits, which both held that similar statutes that criminalized mere offers to

sell were broader than the federal definition.[19]

The Tenth Circuit reached the same result in *United States v. McKibbon*,[20] where it

examined a Colorado statute.  The Colorado statute prohibited the sale of controlled substances

and defined sale to include an offer to sell.[21]  Because that statute criminalized offers to sell a

controlled substance and USSG § 4B1.2(b) does not, the state statute criminalized a broader

range of conduct than the Guideline.[22]  Therefore, the district court erred in enhancing the

defendant's base offense level as a result of his prior Colorado conviction.

The Fifth Circuit examined Utah Code Ann. § 58-37-8(1) in *United States v. Duque-*

*Hernandez*,[23] an unpublished case from 2007.  The court held that, since Utah's statute covered

offers for sale, it was broader than the Sentencing Guidelines.[24]

In his Declaration, prior counsel admits that, other than looking at the dockets, he did not

further analyze whether Petitioner's prior offenses would qualify as controlled substance

offenses and did not object to the base offense level because he believed it was properly

---

[18] *Id.*

[19] *Id.* at 1145–46 (citing *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016); *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008)).

[20] 878 F.3d 967 (10th Cir. 2018).

[21] *Id.* at 971.

[22] *Id.* at 972.

[23] 227 F. App'x 326 (5th Cir. 2007).

[24] *Id.* at 328.  The Fifth Circuit examined Utah's statute under USSG § 2L1.2 rather than USSG § 4B1.2.

calculated.[25]  At the evidentiary hearing, counsel testified that he did not examine whether Petitioner's prior convictions were controlled substance offenses.  Based upon this, Petitioner contends that his counsel's performance was deficient.

The question presented is whether Utah Code Ann. § 58-37-8(1)(a)(ii) is broader than Guideline Section 4B1.2.  Relying on *Madkins* and *McKibbon*, Petitioner asserts that it is, but these cases do not completely resolve the issue.  Courts have held that state statutes that criminalize offers to sell do meet the Guideline definition because they have been interpreted to require something more than a mere offer, such as a showing of intent or overt acts furthering that intent.[26]  This is based on Application Note 1 of USSG § 4B1.2, which provides that a controlled substance offense includes the attempt to commit such an offense.  An attempt, in turn, requires both the intent to commit the crime and overt acts in furtherance of that intent.[27] Courts have held that "[a] bona fide offer comprises both the intent and substantial step necessary to constitute an attempted distribution of a controlled substance."[28]  Thus, where the state statute requires a bona fide offer, courts have held that the statute is categorically a controlled substance offense.

The Tenth Circuit adopted this approach in *McKibbon*.  It stated,

the Tenth Circuit has clearly held that § 4B1.2(b) does not include offers to sell controlled substances, unless the criminalized activity amounts to an attempt to distribute controlled substances.  That means in essence that § 4B1.2(b) includes only bona fide offers to sell, because such activity can be considered an attempt to distribute.  But § 4B1.2(b) does not include non-bona fide offers to sell because

---

[25] Docket No. 9-1 ¶¶ 13–14.

[26] *See United States v. Thomas*, 886 F.3d 1274, 1276 (8th Cir. 2018) (collecting cases).

[27] *United States v. Taylor*, 413 F.3d 1146, 1155 (10th Cir. 2005).

[28] *United States v. Melvin*, 628 F. App'x 774, 778 (1st Cir. 2015).

'offer' itself is not listed in § 4B1.2(b) and a non-bona fide offer cannot be considered an attempt to distribute.[29]

The Tenth Circuit has not analyzed whether Utah Code Ann. § 58-37-8(1)(a)(ii) is limited to bona fide offers. However, the statute and case law suggest that it is. As stated, Utah's statute requires that any of the alternative means, including offers, be done knowingly and intentionally. Utah courts have construed this to mean that the state must prove that a defendant acted with the knowledge or intent that his actions would result in the distribution of a controlled substance and that any act in furtherance constitutes the criminal offense set forth in the statute.[30] The Utah Court of Appeals has specifically held that "[a] defendant who offers to sell drugs with no actual intent of following through is not guilty of the offense of arranging."[31] For example,

> Someone who says, "I could get you a ton of pot," but is only joking, is not guilty of offering to distribute a controlled substance under the statute. Similarly, someone who seems to imply a willingness to arrange a drug transaction, but only intends to pocket the proffered payment and walk off with it, is not guilty under the statute.[32]

Thus, as interpreted by Utah courts, Utah law appears to require both the intent to distribute and an act in furtherance, which is found in the offer.[33]

---

[29] *McKibbon*, 878 F.3d at 976.

[30] *State v. Harrison*, 601 P.2d 922, 923 (Utah 1979) ("The statute in question accomplishes this by specifying that any activity leading to or resulting in the distribution for value of a controlled substance must be engaged in knowingly or with intent that such distribution would, or would be likely to, occur. Thus, any witting or intentional lending of aid in the distribution of drugs, whatever form it takes, is proscribed by the act."); *State v. Hester*, 3 P.3d 726, 729 (Utah Ct. App. 2000) ("As part of its prima facie case of arranging, the State must prove that the defendant acted with the knowledge or intent that his actions would result in the distribution of a controlled substance.").

[31] *Hester*, 3 P.3d at 729.

[32] *Id.* at 728 n.3.

[33] *Pascual v. Holder*, 723 F.3d 156, 159 (2d Cir. 2013).

This makes this case distinguishable from *Madkins* and *McKibbon*. The Tenth Circuit in *Madkins* held that "because a person can offer a controlled substance for sale without having the intent to actually complete the sale, a conviction for an offer to sell can be broader than a conviction for an attempt to sell."[34] In doing so, the court concluded that the Kansas statute, as applied by Kansas courts, included mere offers. In *McKibbon*, the Tenth Circuit examined Colorado case law and found nothing that would limit offers to bona fide offers, as it included fraudulent offers as well.[35]

Petitioner makes three arguments in response. First, Petitioner argues that Utah courts have not limited § 58-37-8(1)(a)(ii) to bona fide offers because Utah case law does not require the offeror to have the ability to proceed with the sale. However, as set forth above, an attempt requires both intent and an overt act in furtherance of that intent. Utah case law, in turn, has defined § 58-37-8(1)(a)(ii) as requiring both the intent to distribute and an act committed in furtherance of that intent. Specifically, "the State must prove that the defendant acted with the knowledge or intent that his actions would result in the distribution of a controlled substance."[36] A defendant's willingness and ability to proceed are demonstrated by that intent and the act(s) done in furtherance of that intent.

Petitioner next argues, for the first time, that Utah's statute covers conduct that is even broader than offers to sell, bona fide or not. The statute makes it unlawful to "agree, consent, offer, or arrange to distribute a controlled or counterfeit substance."[37] But this argument fails for

---

[34] *Madkins*, 866 F.3d at 1147.

[35] *McKibbon*, 878 F.3d at 973–74.

[36] *Hester*, 3 P.3d at 729.

[37] Utah Code Ann. § 58-37-8(1)(a)(ii).

essentially the same reason. Whatever means is used, "if [a defendant] intends the distribution for sale of a controlled substance, any act in furtherance of an arrangement therefor constitutes the criminal offense described by the statute."[38] Thus, all of the alternative means set out in the statute require both an intent to distribute and an act taken in furtherance of that intent, bringing them into the definition of an attempt. Further, even if not attempts, these alternative means may nevertheless be controlled substance offenses. "[A] state offense is not removed from the ambit of the Guidelines' definition of 'controlled substance offense' merely because it does not appear among the enumerated offenses."[39]

Relatedly, Petitioner argues that Utah law does not require that the acts taken in furtherance be substantial.

> The "substantial step" required to establish an attempt must be something beyond mere preparation. It must be an act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime. A substantial step is an appreciable fragment of a crime and an action of such substantiality that, unless frustrated, the crime would have occurred. The step must be strongly corroborative of the firmness of the defendant's criminal intent and must unequivocally mark the defendant's acts as criminal. It should evidence commitment to the criminal venture.[40]

It is true that the Utah Supreme Court has stated that "any act in furtherance of an arrangement [of a drug sale] constitutes the criminal offense described by the statute."[41] However, such acts are limited to those "leading to or resulting in the distribution for value of a controlled substance" and must be done with the "intent that such distribution would, or would

---

[38] *Harrison*, 601 P.2d at 924.

[39] *United States v. Faulkner*, No. 18-7066, slip op. at 5 (10th Cir. Dec. 24, 2019).

[40] *United States v. Smith*, 264 F.3d 1012, 1016 (10th Cir. 2001) (citation omitted).

[41] *Harrison*, 601 P.2d at 924.

be likely to, occur."[42]  In discussing the intent element, the Utah Court of Appeals noted

evidence of intent can be shown not only by a completed sale, but also "by showing that the

defendant took active steps to facilitate the completion of an illicit transaction."[43]  The court then

provided a number of examples of how intent could be shown.[44]  Thus, contrary to Petitioner's

suggestion, it appears that Utah does require a substantial step in the form of either a completed

sale or "active steps to facilitate the distribution of [a controlled substance], even if the

distribution never actually occurred."[45]

Petitioner's final argument is that the commentary to the Guidelines improperly expands

the scope of the definition of controlled substance offenses.  Petitioner points out the certain

courts have recently adopted this position.[46]  However, the Tenth Circuit has not.  The Tenth

Circuit has held "that the Commission acted within [its] broad grant of authority in construing

attempts to commit drug crimes as controlled substance offenses."[47]  Other circuit courts have

reached the same conclusion.[48]

The Court must evaluate counsel's performance "from counsel's perspective at the

time."[49]  At the time of Petitioner's sentencing, the Tenth Circuit had rejected the very argument

he claims counsel was ineffective in failing to raise.  Based upon the state of the law at the time,

---

[42] *Id.* at 923.

[43] *Hester*, 3 P.3d at 729.

[44] *Id.* at 729 & n.6.

[45] *Id.* at 729.

[46] *See United States v. Havis*, 927 F.3d 382, 386–87 (6th Cir. 2019).

[47] *United States v. Chavez*, 660 F.3d 1215, 1228 (10th Cir. 2011).

[48] *Id.* at 1228 n.2.

[49] *Strickland*, 466 U.S. at 689.

the Court cannot conclude that counsel was ineffective in not raising this issue. Counsel does not perform deficiently if failing to foresee future developments in the law.[50]

Based on the above, it appears that Utah Code Ann. § 58-37-8(1)(a)(ii) is limited to bona fide offers and, therefore, would categorically be a controlled substance offense. However, as the discussion above demonstrates, the answer is certainly not straightforward and has not been conclusively decided. The fact that the answer is not clear and has not been addressed by the Tenth Circuit provides support for the Court's ultimate determination that counsel was not ineffective.

A recent decision from the Tenth Circuit is instructive. In *United States v. Holloway*,[51] the Tenth Circuit addressed an ineffective assistance claim based on counsel's failure to object to a sentencing enhancement. The court found that the petitioner failed to overcome the strong presumption that the challenged action might be considered sound trial strategy. The court stated that "[t]he strong presumption in favor of attorney competence assumes that counsel makes a strategic evaluation after considering the relevant costs and benefits of certain actions."[52] The court noted that while the petitioner's argument regarding the application of the sentencing enhancement was "colorable, the case law is not settled in this Circuit."[53] Further, raising the objection could have harmed the petitioner.[54]

---

[50] *United States v. Gonzalez-Lerma*, 71 F.3d 1537, 1542 (10th Cir. 1995).

[51] 939 F.3d 1088 (10th Cir. 2019).

[52] *Id.* at 1103.

[53] *Id.*

[54] *Id.* at 1104.

The petitioner nonetheless argued that counsel was ineffective because he failed to challenge an inapplicable enhancement. The petitioner relied on *United States v. Kissick* and *United States v. Glover*.[55] The Tenth Circuit distinguished both cases. In *Kissick*, the court found that counsel's performance was deficient when he failed to challenge a prior conviction that was "*facially insufficient*" to satisfy the career offender classification.[56] In *Glover*, the court found deficient performance when counsel failed to raise a "*clearly meritorious*" sentencing issue.[57] Thus, "[i]n both *Kissick* and *Glover*, counsel failed to raise clearly meritorious arguments and there was no indication that the defendant could have been prejudiced if counsel objected."[58] In contrast, in *Holloway* "the objection was not a clear winner and could have prejudiced Holloway. Thus, counsel's failure to object . . . is reasonably attributable to sentencing strategy."[59]

The same is true here. The objection Petitioner contends counsel should have raised is "not settled in this Circuit" and is not a "clear winner."[60] Further, the decision not to raise the issue could reasonably be attributable to counsel's desired strategy to avoid the application of a § 851 enhancement. Had counsel objected, it may have jeopardized the parties' agreement, which was based on the assumption that Petitioner's prior convictions did qualify as controlled substance offenses. In such a circumstance, it would be reasonable for counsel to not object to the inclusion of this enhancement. When viewed in totality, the Court cannot conclude that

---

[55] 97 F.3d 1345 (10th Cir. 1996).

[56] *Kissick*, 69 F.3d at 1056 (emphasis added).

[57] *Glover*, 97 F.3d at 1349 (emphasis added).

[58] *Holloway*, 939 F.3d at 1104.

[59] *Id.*

[60] *Id.* at 1103, 1104.

counsel's performance at sentencing was deficient.  Instead, the evidence demonstrates that counsel conducted research to determine whether Petitioner qualified as a career offender.  In doing so, he met with a supervisory probation officer to confirm his analysis.  He then advised Petitioner to plead to the firearm charge because it avoided the possibility of an enhancement under § 851.  At sentencing, counsel objected to the "in connection with" enhancement that was contained in the Presentence Report, believing that it was improperly applied.  While counsel did not object to the base offense level, based on the discussion set forth above, the Court cannot conclude that this failure was constitutionally deficient.

2. *Identity of the Controlled Substance*

Petitioner's next argument is that Utah Code Ann. § 58-37-8(1)(a)(ii) is not categorically a controlled substance offense because it includes controlled substances not listed in 21 U.S.C. § 802.  The Tenth Circuit has found, based on a concession by the government, "that a violation of Utah § 58-37-8(2) is not categorically a controlled-substance offense" for this same reason.[61] The same reasoning applies to the statute at issue here as they both rely on the same definition of controlled substance.[62]  Thus, the question becomes "whether Utah treats the identity of the specific controlled substance as an element of the . . . crime that must be proven beyond a reasonable doubt."[63]  If it does, the modified categorical approach can be used to determine what drug is at issue, as Petitioner concedes.[64]

---

[61] *Zu-Chen Horng v. Lynch*, 658 F. App'x 415, 416 (10th Cir. 2016).

[62] Utah Code Ann. § 58-37-2(1)(f).

[63] *Zu-Chen Horng*, 658 F. App'x at 417.  The Tenth Circuit remanded *Zu-Chen Horng* to the Board of Immigration Appeals to make this determination.

[64] Docket No. 1, at 12.

The Supreme Court has identified a number of tools the Court can use to determine whether a statute's "listed items are elements or means."[65] The first place to look is at state court decisions. Petitioner points to no Utah case law addressing this issue and the Court's research has uncovered none. Using the other tools identified by the Supreme Court in *Mathis*, the conclusion is not much clearer. A peek at the record documents does not identify the substance at issue except in the factual statement of the plea agreement. However, Utah's model jury instructions require the particular substance to be named.[66] Courts have concluded that the identity of the controlled substance is an element that must be found by the jury when the jury instructions require identification of the particular controlled substance.[67] This distinguishes Utah's statute from the Arizona statute relied upon by Petitioner.[68] Based upon this, it appears likely that the identity of the controlled substance is an element of the offense. However, given these mixed results and the lack of binding authority, the Court cannot conclude that counsel was deficient for failing to raise this issue.[69]

---

[65] *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).

[66] Utah Model Jury Instructions CR0 ¶ 3 (stating that parentheses are used when the information must be entered); *Id.* CR1210 (stating the name of the controlled or counterfeit substance in parentheses).

[67] *See United States v. Vega-Ortiz*, 822 F.3d 1031, 1035 (9th Cir. 2016); *see also Mathis*, 136 S. Ct. at 2257 (stating that "an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime").

[68] *See Vera-Valdevinos v. Lynch*, 649 F. App'x 597, 598 n.1 (9th Cir. 2016) (noting that "Arizona's jury instructions do not require the jury to make a finding of fact regarding the specific substance at issue").

[69] *Holloway*, 939 F.3d at 1103–04.

*3.     Geometric Isomers*

Finally, Petitioner argues that his state conviction is not categorically a controlled substance offense because Utah defines methamphetamine more broadly than federal law. More particularly, Petitioner argues that federal law is limited to one kind of methamphetamine isomer—the optical isomer—while Utah law is not so limited and includes geometric isomers.

The Ninth Circuit found this reasoning persuasive in *Lorenzo v. Sessions*.[70] However, that decision was withdrawn and replaced with an unpublished decision.[71] This was done in response to an argument that "geometric isomers of methamphetamine do not in fact exist."[72]

Petitioner has failed to present this Court with any evidence that geometric isomers of methamphetamine exist. To "fail the categorical inquiry,"[73] there must be a realistic probability that the state would apply its statute to conduct that falls outside the scope of the federal definition.[74] No such showing has been made here because Utah could never charge a person with distribution of geometric isomers in methamphetamine if, in fact, they do not exist. Therefore, Petitioner's counsel performance was not deficient in not raising this issue.

## C.     FAILURE TO FILE AN APPEAL

Petitioner next argues that counsel was ineffective for failing to file an appeal on his behalf. The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally

---

[70] 902 F.3d 930, 934–38 (9th Cir. 2018).

[71] *Lorenzo v. Whitaker*, 752 F. App'x 482 (9th Cir. 2019).

[72] *Id.* at 485.

[73] *Moncrieffe v. Holder*, 569 U.S. 184, 205 (2013).

[74] *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

unreasonable."[75]  This is true even when a defendant has waived his appeal rights.[76]  "Under such circumstances a defendant is entitled to a belated appeal without showing the appeal to have merit."[77]

In his Declaration, Petitioner's trial counsel stated that, after Petitioner was sentenced, "he told me he wanted to appeal the district court's determination that [he] possessed a firearm in connection with another felony offense."[78]  Counsel stated that he did not file a notice of appeal because he believed that Petitioner no longer had the right to appeal and that he would have filed a notice of appeal but for the appeal waiver contained in the plea agreement.[79]  At the evidentiary hearing, counsel clarified that Petitioner never instructed him to file an appeal.  Rather, Petitioner accepted counsel's advice not to appeal.

Because Petitioner did not instruct his counsel to file an appeal, the Court must consider "whether counsel in fact consulted with the defendant about an appeal."[80]  To adequately consult a defendant, counsel must advise "the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes."[81]  "If counsel has consulted with the defendant, the question of deficient performance is easily

---

[75] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

[76] *Garza v. Idaho*, ---U.S.---, 139 S. Ct. 738, 744 (2019).

[77] *United States v. Parker*, 720 F.3d 781, 786 (10th Cir. 2013).

[78] Docket No. 9-1 ¶ 16

[79] *Id.* ¶¶ 17–18.

[80] *Flores-Ortega*, 528 U.S. at 478.

[81] *Id.*

answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."[82]

Based on the testimony provided at the evidentiary hearing, the Court concludes that counsel adequately consulted with Petitioner about an appeal. As set forth above, after Petitioner expressed interest in filing an appeal, counsel sought and received an extension of time to file an appeal. During that time, counsel examined the change of plea hearing to determine whether there were any appealable issues that might arise from that proceeding. Counsel further considered whether the prosecutor had done something that might have violated the plea agreement. After conducting this additional analysis, counsel advised Petitioner not to file an appeal; advice that Petitioner followed. Based upon this evidence, the Court cannot conclude that counsel's consultation fell below an objective standard of reasonableness. Therefore, Petitioner has failed to show that his counsel's performance was deficient.

## IV. CONCLUSION

It is therefore

ORDERED that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket No. 1 in Case No. 2:18-CV-819 TS) is DENIED and DISMISSED. It is further

ORDERED that pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, the Court DENIES Petitioner a certificate of appealability.

---

[82] *Id.*

DATED this 2nd day of January, 2020.

BY THE COURT:

_____

Ted Stewart
United States District Judge